Springer, J.,
dissenting:
The majority wrongly concludes that the evidence “supports the finding of . . . the aggravating circumstance enumerated in NRS 200.033(9),” namely, that the murder was committed “at random and without apparent motive.” What the State’s evidence does support is that Nika acted purposively and not randomly and that he was motivated to kill either out of anger at being called a “motherfucker” or because he wanted to rob his victim of the victim’s car.
The only evidence in this case of the circumstances of this killing is the evidence presented by the State. From this evidence the jury learned that Nika, frustrated and angered by his car-breakdown, broke into a frenzied homicidal rage during which he, by his own admission, beat his victim with a crowbar and shot him in the head. Not a pretty sight, indeed, but not necessarily, under our law, a death penalty case.
As stated in the majority opinion, Nika was from Romania and spoke only broken English and certainly did not understand, other than in its literal sense, the epithet, “motherfucker.” The evidence was that Nika had remarked that in his country using such an expression could result in the death of the name-caller. The most likely “apparent” motive to be derived from the State’s *1442 case was Nika’s extreme anger, evoked by his victim’s insult to him and to his mother.
Anger, brought about by defending his mother’s honor, is not the only possible or “apparent” motive in this case, however. Robbery is another “apparent” motive. The victim’s wallet, with money in it, was found by the victim’s side, so this was probably not a robbery of the person. Nika did decide, however, to take the victim’s car after the killing. Although, taking the car appears to be more of an afterthought after the homicide and more likely a larceny than a robbery, robbery is surely, at least, an apparent motive. The jury, of-course, concluded that this was not a robbery case (apparently believing that the car theft was an afterthought). If the jury had found a robbery, this finding would have been a valid aggravating circumstance, and there would be little difficulty in affirming the death penalty. The jury, however, did not find robbery as an aggravating circumstance; and the only aggravating circumstance in this case is Nevada’s curious and unexampled “at random and without apparent motive.”[1]
There are, of course, a number of possible “apparent” motives for Nika’s killing his victim. Robbery is an “apparent motive”; but with the jury’s rejection of this aggravating circumstance, the most probable motive for this killing (both real and “apparent”) is that, given his cultural background, Nika could not countenance anyone’s accusing him of having sexual relations with his mother. At least, this is what the State’s evidence would have the jury believe. Still, the majority somehow concludes that Nika did not even have an “apparent” motive to kill. As far as I can tell, the majority has nothing to say in its opinion to support the completely insupportable, if not unthinkable, proposition that in the face of all of the State’s evidence, Nika did not even have an ostensible or “apparent” motive to kill this particular victim. The majority opinion maintains that because Nika did not “needQ to murder Smith in order to rob him . . . the evidence presented at trial provides ample support for the jury’s finding that [Nika] acted at random and without apparent motive.” However, in support of its conclusion that Nika acted without “apparent” motive, the majority goes on to state a non sequitur, that “robbery was not a likely motive for the killing.” This statement is not only inconsistent with the State’s theory, it is not true. The evidence presented at trial presents absolutely no evidence that Nika acted either at random or without apparent motive.
Once the majority decides (apparently because of the jury verdict) that robbery was “likely” not Nika’s true motive, it *1443 fallaciously jumps to the conclusion that robbery could not be even an “apparent” reason for the crime. I would argue that even if robbery was not a “likely” motive, it surely could still be an “apparent” motive.
If I understand the majority opinion correctly, the majority justices are trying to say to us that if robbery was not a “likely motive,” it cannot then be an “apparent” motive. The jury was not given a definition of “apparent.” Presumably, the jurors relied on their common sense understanding of the word. “Apparent” refers to a possibility, that which is evident from the circumstances or that which appears to be real.[2] Of course robbery was, at the very least, an “apparent” motive for this killing. The State, itself, took the position that not only was Nika motivated to rob, he did in fact rob. Robbery was an apparent reason insofar as the State was concerned. Further, as pointed out by Justice Rose in his dissent, it is inconsistent and “improper for the State to argue during the guilt phase that Nika had acted with a motive and then argue in the penalty phase that Nika had acted without a motive.”
Obviously, robbery becomes no less of an “apparent” motive either because the jury ultimately concluded that no robbery was committed or because the majority guesses that robbery was an “unlikely” motive. I am not suggesting, of course, that I, or anyone else, can truly say which of the possible “apparent” motives motivated Nika to kill this victim. All I am saying is that it approaches the nonsensical to propose that there was no “apparent motive” for this killing.[3]
*1444 Under the statute and the instruction given, to be guilty of this aggravating circumstance, not only must Nika have killed without any apparent motive, he must also have killed “at random.” The majority cites cases to support its without-apparent-motive case but fails to discuss in any fashion the indispensable at random element of this aggravating circumstance.
The jury, of course, was given no definition of what the term “at random” means; and it was left to its own devices in defining the element of randomness. I agree with dissenting Justice Rose that it is “essential to define the term[] ‘random’ ... in order to give the jury guidance and ‘genuinely narrow the class of person eligible for the death penalty.’ ” Neither the majority nor concurring opinion gives any thought or attention to the meaning of the word “random.” Unless there is evidence upon which a jury can properly find, beyond a reasonable doubt, that Nika acted in random manner, the requirements of this aggravating factor cannot be fulfilled.
In common parlance “random” means aimless and left to chance. This killing does not have the slightest hint of being either aimless or random. According to the State, it was a killing committed out of rage or motivated robbery, two real or “apparent” motives.
As noted, Nevada appears to be the only State that has provided for this odd aggravating circumstance. Presumably, it was intended to address the culpability inherent in unprovoked, uncalled-for killings of persons unknown to the killer. If, for example, a person were to fire a machine-gun “at random” into a crowd, not caring who the victims were, just wanting to kill someone, such a case would probably fall into the category of a *1445 random killing. We have nothing like that here. The only thing that we know about this killing is what was presented by the prosecution and that is that Nika and his victim were engaged in a conversation relative to Nika’s car trouble and that the conversation escalated into a physical confrontation. Whether Nika was motivated by anger or by the intent to rob, we do not know; but it does not matter. What matters is whether there was an apparent motive. If we did not have this State’s evidence, we might possibly indulge in the conjecture that Nika did not kill to rob or kill out of anger and that he therefore killed “senselessly]” just for the sake of killing itself; but the State’s case is all we have. We cannot, given the evidence that was presented by the State to the jury, fairly conclude that Nika went out randomly and indifferently, and for no particular reason, indiscriminately shot and killed another human being.
In sum, then, there was nothing random about Nika’s deciding, for whatever real or “apparent” motive, to kill this victim under the circumstances defined and described by the prosecution. There are, as I have explained, a number of “apparent motives” for this killing. The killing was neither random nor without apparent motive; therefore, Nika is not death-eligible, and his death sentence should be reversed.

 As far as I can discover, Nevada is the only state that employs the quoted phrase as an aggravating circumstance.

“Apparent” is defined in the dictionary as:
Clear or manifest to the understanding; plain, evidence, obvious, palpable .... Appearing as actual to the eye or mind (distinguished from, but not necessarily opposed to, actual, true, or real); bearing, or supported by, such evidences of reality as lead to believe in the existence of the thing evidenced; seeming; . . . having such an appearance of reality as reasonably to appear true under the circumstances.
Webster’s International Dictionary 129 (2d ed. 1948).

 The majority’s point is that the State’s case relating to Nika’s being motivated by robbery, anger and defense of his mother’s honor does not furnish evidence of even an apparent motive to kill. The position of the concurring justice is even stranger. The concurring justice argues that the jury could have rejected all of the State’s evidence relating to Nika’s robbing the victim as well as the State’s evidence relating to Nika’s anger and then have properly come to the conclusion that the murder was not motivated at all but, rather, was “senseless” and “apparently motiveless.”
I would remind my concurring colleague that “absence of evidence is not evidence of absence” and that even if the jury rejected all the State’s evidence on how this killing took place, this still would not permit the jury to conclude that there was not at least an “apparent” motive. It is, of course, unreasonable and unlikely that the jury would have rejected the State’s entire case (except the killing part) and on that basis have concluded that no motive *1444 for the killing was “apparent.” Even if the jury had rejected most of the State’s case and concluded that there was not present in this case some true motive, the jury simply could not have reasonably concluded that there were no “apparent” motives in this case.
As understood and expounded in the Rose dissent, what the prosecutor was really arguing to the jury in this case was something like this:
This man unlawfully murdered a man out of anger just because the man called him a motherfucker — or would you believe, instead, that he was motivated by robbery? If you do not believe either of these, would you believe he killed for no apparent reason at all?
Again, even if, as the concurring opinion suggests, the jury might have rejected all of the State’s evidence relating to what the State claimed were Nika’s motives to kill, this would not mean that the jury was entitled to find, beyond a reasonable doubt, that the killing was “apparently motiveless.” There is absolutely no evidence in this case that Nika acted without any real or apparent motive. The jury was not, as the concurring opinion suggests, entitled to conclude under the evidence produced by the State that Nika had no apparent reason, no inducement, no incitement to kill and that he, whimsically, and for no particular reason, killed merely for the sake of killing.